

01

02

03

04

05              UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
06                     AT TACOMA

07  TAMMY SUE VILLA,                    )
                                        )   CASE NO. 3:15-CV-5373-DWC
08          Plaintiff,                  )
                                        )
09          v.                          )
                                        )   ORDER RE: SOCIAL SECURITY
10  CAROLYN W. COLVIN, Acting           )   DISABILITY APPEAL
    Commissioner of Social Security,    )
11                                      )
            Defendant.                  )
12  _____  )

13          Plaintiff Tammy Sue Villa proceeds through counsel in her appeal of a final decision

14  of the Commissioner of the Social Security Administration (Commissioner).  The

15  Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a

16  hearing before an Administrative Law Judge (ALJ).[1]  Having considered the ALJ's decision,

17  the administrative record (AR), and all memoranda of record, the Court concludes the ALJ

18  provided insufficient legal reasons to reject the medical opinions of examining physician Dr.

19  Mark Heilbrunn and examining psychologist Dr. Kimberly Wheeler. Had the ALJ properly

20  _____
    [1] Plaintiff applied for SSI on July 30, 2007.  AR 13. Plaintiff was found to be not disabled. *See* AR 13-23, 1-3.
21  Plaintiff appealed to the United States District Court for the Western District of Washington, which resulted in a
    stipulated reversal and remand for further proceedings. *See* AR 477-80; *Villa v. Astrue*, 3:10-CV-5733-RBL-
    KLS (W.D. Wash.). On remand, Plaintiff received a second hearing before ALJ Robert P. Kingsley, who found
22  Plaintiff not disabled. AR 396-417. The Appeals Council affirmed this decision (AR 371-74) and Plaintiff now
    appeals ALJ Kingsley's decision finding Plaintiff not disabled.

    ORDER RE: SOCIAL SECURITY
    DISABILITY APPEAL
    PAGE -1

01   considered these two medical opinions, the residual functional capacity (RFC) may have

02   included additional limitations. The ALJ's error is therefore not harmless, and this matter is

03   reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner

04   for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

06      Plaintiff was born on XXXX, 1961.[2]  She has a tenth grade education.  AR 679.  She

07   has no past relevant work.   AR 415.

08      After remand for further proceedings by the United States District Court in the

09   Western District of Washington (AR 478-79), on September 20, 2012, ALJ Robert P.

10   Kingsley held a video hearing from Tacoma, Washington, taking testimony from Plaintiff, a

11   vocational expert, and an impartial medical expert.  AR 425-76.  On January 10, 2013, the

12   ALJ issued a decision finding Plaintiff not disabled.  AR 396-417.  Plaintiff timely appealed.

13   The Appeals Council denied Plaintiff's request for review on April 15, 2015 (AR 371-77),

14   making the ALJ's decision the final decision of the Commissioner.  Plaintiff appealed this

15   final decision of the Commissioner to this Court.

**JURISDICTION**

17      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. §

18   405(g).

---

[2] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -2

01 **<u>DISCUSSION</u>**

02     The Commissioner follows a five-step sequential evaluation process for determining

03 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it

04 must be determined whether the claimant is gainfully employed.  The ALJ found Plaintiff had

05 not engaged in substantial gainful activity since July 30, 2007, the application date.  AR 398.

06 At step two, it must be determined whether a claimant suffers from a severe impairment.  The

07 ALJ found Plaintiff's right shoulder impingement, lumbar spine degenerative disc disease,

08 and migraine headaches to be severe impairments.  AR 398.  Step three asks whether a

09 claimant's impairments meet or equal a listed impairment.  The ALJ found Plaintiff's

10 impairments did not meet or equal the criteria of a listed impairment. AR 405.

11     If a claimant's impairments do not meet or equal a listing, the Commissioner must

12 assess the RFC and determine at step four whether the claimant has demonstrated an inability

13 to perform past relevant work.  The ALJ found Plaintiff capable of performing light work,

14 lifting up to 20 pounds occasionally and 10 pounds frequently. AR 406.  20 C.F.R. §

15 416.967(b).  She can occasionally stoop, kneel, crouch, crawl, reach bilaterally, and climb

16 ramps and stairs. AR 406.  She can frequently balance, but cannot climb ladders, ropes, or

17 scaffolds. AR 406. She must avoid concentrated exposure to vibrations, airborne pollutants,

18 and hazards. AR 406. Finally, she cannot perform jobs requiring manufacturing-style

19 production pace. AR 406.

20     The ALJ concluded Plaintiff has no past relevant work for comparison to the RFC. AR

21 415. Therefore, the burden shifts to the Commissioner to demonstrate at step five that the

22 claimant retains the capacity to make an adjustment to work that exists in significant numbers

01  in the national economy.  Based on testimony by a vocational expert, the ALJ found Plaintiff

02  capable of performing jobs such as furniture rental consultant, usher, and counter clerk. AR

03  416.  The ALJ found Plaintiff not disabled.  AR 416.

04      This Court's review of the ALJ's decision is limited to whether the decision is in

05  accordance with the law and the findings supported by substantial evidence in the record as a

06  whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means

07  more than a scintilla, but less than a preponderance; it means such relevant evidence as a

08  reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

09  F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

10  supports the ALJ's decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

11  F.3d 947, 954 (9th Cir. 2002).

12      Plaintiff argues the ALJ erred by: 1) providing legally insufficient reasons to reject

13  examining physician Dr. Heilbrunn's opinion; 2) providing legally insufficient reasons to

14  reject examining psychologist Dr. Wheeler's opinion; 3) providing legally insufficient reasons

15  for discrediting Plaintiff's testimony; and 4) failing to support RFC, hypothetical questions,

16  and step five findings given the harmful errors. Dkt. 12, p. 1. Plaintiff requests remand for

17  award of benefits, or in the alternative, further proceedings.

18      I.    Medical Opinion Evidence

19      Plaintiff alleges the ALJ failed to provide specific and legitimate reasons for

20  discounting the opinions of examining medical sources Mark Heilbrunn, M.D. and Kimberly

21  Wheeler, Ph.D. Dkt. 12, pp. 4-10.

22      The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -4

01  opinion of either a treating or examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th

02  Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or

03  examining physician's opinion is contradicted, the opinion can be rejected "for specific and

04  legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at

05  830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1994); *Murray v. Heckler*,

06  722 F.2d 499, 502 (9th Cir. 1983)).  The ALJ can accomplish this by "setting out a detailed

07  and thorough summary of the facts and conflicting clinical evidence, stating his

08  interpretations thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.

09  1998) (*citing Magallanes*, 881 F.2d at 751).

10      1. <u>Mark Heilbrunn, M.D., examining physician</u>

11      Plaintiff contends the ALJ erred by providing conclusory reasons for giving little

12  weight to portions of examining physician Dr. Mark Heilbrunn's opinion. *See* Dkt. 12, p. 6.

13      "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while

14  doing nothing more than ignoring it, asserting without explanation that another medical

15  opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a

16  substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir.

17  2014) (*citing Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)). As the Ninth Circuit

18  has stated:

19      To say that medical opinions are not supported by sufficient
        objective findings or are contrary to the preponderant
20      conclusions mandated by the objective findings does not
        achieve the level of specificity our prior cases have required,
21      even when the objective factors are listed seriatim.  The ALJ
        must do more than offer his conclusions. He must set forth his
22      own interpretations and explain why they, rather than the

01          doctors', are correct.

02 *Embrey*, 849 F.2d at 421-22 (internal footnote omitted).

03          Dr. Heilbrunn performed a physical evaluation in February 2008. AR 283-89. He

04 found Plaintiff has a mildly antalgic gait with increased weight on the left side. AR 286.

05 Plaintiff has thoracic kyphosis and right paraspinous muscle tenderness. AR 286. She has

06 bilateral hand tremors at rest, with volar tenderness, as well as tenderness over the dorsal

07 aspect of the right wrist and palmar aspect of her hand.  AR 286. Her right grip strength was

08 reduced. AR 288.

09          Dr. Heilbrunn opined Plaintiff has "postural range of motion limitations of her lumbar

10 back and a manipulative range of motion limitation of the right shoulder[.]" AR 288.   He

11 found Plaintiff can sit for twenty minutes uninterrupted with weight off her right hip for a

12 cumulative length of time of five out of eight hours with periods for postural repositioning.

13 AR 288. He also opined Plaintiff can stand for twenty to thirty uninterrupted minutes for a

14 cumulative time of six out of eight hours. AR 288.  Additionally, Dr. Heilbrunn found

15 Plaintiff is unable to perform a full crouch, cannot kneel, and is unable to stoop to the floor

16 level. AR 288. Dr. Heilbrunn opined Plaintiff is able to lift and carry fifteen pounds with her

17 left hand and five pounds with her right; she has no reaching limitations in her left shoulder or

18 below her shoulder on the right side. AR 288-89.

19          The ALJ gave "significant weight to Dr. Heilbrunn's opinion that [Plaintiff] is capable

20 of walking and standing throughout the work day to the light exertional level[.]" AR 413.

21 However, the ALJ

22          gave little weight to Dr. Heilbrunn's opinion that [Plaintiff] is

01
02
03
> capable of lifting at less than the light exertional level, or that she requires more changes in posture than would be available during normal breaks. The overall evidence of record is not consistent with this degree of limitation. None of the claimant's other examinations have indicated this degree of lifting limitations.

04     AR 413.

05

06     The ALJ provided only vague, conclusory statements finding the overall evidence

07     does not support Dr. Heilbrunn's opinion regarding Plaintiff's lifting limitations and changes

08     in posture. The ALJ failed to identify any evidence in the record which is inconsistent with

09     these portions of Dr. Heilbrunn's opinion. Further, the ALJ has not cited to other medical

10     examinations in the record which show less restrictive lifting limitations. *See* AR 413.

11     Without more, the ALJ has failed to meet the level of specificity required to reject a

12     physician's opinion. Therefore, the ALJ's conclusory statements that the "overall evidence"

13     regarding Plaintiff's lifting restrictions and changes in posture are insufficient to reject Dr.

14     Heilbrunn's opinion. *See Embrey*, 849 F.2d at 421-22 (conclusory reasons do "not achieve the

15     level of specificity" required to justify an ALJ's rejection of an opinion); *McAllister v.*

16     *Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (an ALJ's rejection of a physician's opinion on

17     the ground that it was contrary to clinical findings in the record was "broad and vague, failing

18     to specify why the ALJ felt the treating physician's opinion was flawed").

19     The ALJ also failed to identify the weight given to Dr. Heilbrunn's opinion regarding

20     Plaintiff's inability to stoop, crouch, or kneel.[3] *See* AR 413. While the ALJ "need not discuss

21     *all* evidence presented," he "must explain why significant probative evidence has been

22

---

[3] The ALJ gave little weight to Dr. Heilbrunn's limitations related to Plaintiff's need to change postures, but did not identify the weight given to Dr. Heilbrunn's opinion regarding Plaintiff's ability to stoop, crouch, and kneel, which are considered postural limitations under the Social Security Regulations. *See* SSR 18-15.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -7

01    rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)

02    (citation omitted) (emphasis in original). Plaintiff's inability to stoop, crouch, and kneel is

03    related to her ability to perform work activities and is therefore significant, probative

04    evidence. *See Provencio v. Astrue*, 2012 WL 2344072, *9 (D. Ariz., June 20, 2012). The ALJ

05    did not provide any explanation as to the weight given to this evidence. As such, the Court

06    cannot determine if the ALJ properly considered and rejected this evidence or gave this

07    evidence great weight, but failed to incorporate the limitations into the RFC assessment.

08    Accordingly, the ALJ erred when he failed to explain the weight given to Dr. Heilbrunn's

09    opinion regarding Plaintiff's inability to stoop, crouch, or kneel.

10         "[H]armless error principles apply in the Social Security context." *Molina v. Astrue*,

11    674 F.3d 1104, 1115 (9th Cir. 2012).  An error is harmless, however, only if it is non-

12    prejudicial to the claimant or "inconsequential" to the ALJ's "ultimate nondisability

13    determination." *Stout v. Commissioner, Social Security Admin.*, 454 F.3d 1050, 1055 (9th Cir.

14    2006); *see Molina*, 674 F.3d at 1115.  The determination as to whether an error is harmless

15    requires a "case-specific application of judgment" by the reviewing court, based on an

16    examination of the record made "'without regard to errors' that do not affect the parties'

17    'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v. Sanders*, 556 U.S.

18    396, 407 (2009) (quoting 28 U.S.C. § 2111)).

19         Had the ALJ properly considered Dr. Heilbrunn's opinion as to Plaintiff's lifting,

20    stooping, crouching, and kneeling limitations and her need for posture changes, he may have

21    included additional limitations in the RFC and in the hypothetical questions posed to the

22

01  vocational expert, Kim North. As the ultimate disability determination may have changed, the

02  ALJ's error is not harmless and requires reversal.

03      2. <u>Kimberly Wheeler, Ph.D.</u>

04      Dr. Kimberly Wheeler conducted a psychological assessment of Plaintiff in October

05  2011. AR 679-84. Dr. Wheeler diagnosed major depression and anxiety with a provisional

06  diagnosis of borderline personality disorder. AR 680. Dr. Wheeler observed Plaintiff's mood

07  disturbance, anxiety, paranoia, decreased energy, and irritability which would have marked

08  impact on work activities. AR 680. During mental status testing, Dr. Wheeler observed

09  derailed thought process, impaired delayed memory, and distractibility. AR 684. Her

10  concentration was effortful with little awareness of errors. AR 684. She could not perform

11  serial sevens, but could provide her social security number. AR 684. She had limited

12  judgment and problem-solving skills. AR 685.

13      Dr. Wheeler opined Plaintiff has moderate limitations in her ability to learn new tasks,

14  perform routine tasks without undue supervision, and be aware of hazards.  AR 681.  Dr.

15  Wheeler also opined Plaintiff is severely limited in her ability to perform effectively in a

16  workplace setting, even with limited public contact due to low trust and expectations that

17  others would hurt or betray her. AR 682.  Also, Dr. Wheeler found Plaintiff is severely

18  limited in her ability to maintain appropriate behavior in a work setting because she was "full

19  of self-pity, excuses, misery." AR 682.

20      The ALJ gave little weight to Dr. Wheeler's evaluation because it was

21          [1] not consistent with the longitudinal evidence of record. The
            claimant's treatment records show that, absent relatively recent
22          and significant psychosocial stressors, her symptoms have not

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -9

required specialized mental health care and improve with medication. [2] Mental status examinations are more often than not unremarkable. [3] Dr. Wheeler's opinion and GAF score are not consistent with her objective examination findings. [4] She did not have treatment history with the claimant and [5] based her opinion primarily on the claimant's subjective complaints. [6] She did not include a narrative statement of functional capacity in the section titled "Medical Source Statement." The GAF estimate appears to have taken into account psychosocial stressors, such as the claimant's stressful situation with her son and financial difficulties, which would be expected to cause normal stress. [7] The review of records provides no independent evaluation of the claimant since it is not supported by an examination.

AR 403, 404 (internal citations omitted; numbering added).

First, the ALJ found Dr. Wheeler's opinion was not consistent with the longitudinal record. AR 404. The ALJ determined Plaintiff's "treatment records show that, absent relatively recent and significant psychosocial stressors, her symptoms have not required specialized mental health care and improve with medication." AR 404. "[T]he fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of claimant's condition is inaccurate." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). "[I]t is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Id.* (citation omitted); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). Thus, the ALJ may not discredit Dr. Wheeler's opinion simply because the ALJ finds Plaintiff has insignificant mental health treatment records.

01          Furthermore, the evidence indicates Plaintiff received mental health treatment. At the

02     hearing, the impartial medical expert testified about several different psychiatric visits and

03     evaluations. AR 433. The medical records from three visits with Dr. Jennifer Sexton

04     demonstrate consistent treatment-resistant anxiety and depression. AR 654-55, 657, 685. In

05     February 2012, Plaintiff had a psychiatric follow-up due to lack of symptom improvement.

06     AR 654. She reported a slight improvement in anxiety and depression, but still experienced

07     moderate to severe depression and moderate anxiety. AR 654. She was told to increase her

08     antidepressant medication but to watch for potential symptoms on higher doses "as bipolar

09     spectrum has not been completely ruled out." AR 655. At her next appointment in April 2012,

10     Plaintiff again reported severe anxiety and depression despite increased medication.  AR 657.

11     She "was tearful and more dysphoric and angry at her last visit." AR 657.  In June 2012 she

12     continued to report severe anxiety and depression. AR 685.  Plaintiff was re-screened for

13     bipolar disorder because her mood disorder was found to be treatment resistant. AR 685. The

14     psychiatrist recommended tapering and avoiding antidepressants due to possibility of

15     increasing her agitation. AR 686. Given this evidence of treatment-resistant mood disorder,

16     the ALJ's rejection of Dr. Wheeler's opinion based on the "longitudinal evidence of record" is

17     unsupported by substantial evidence.

18          The ALJ next discredited Dr. Wheeler's opinion because "[m]ental status

19     examinations were more often than not unremarkable." AR 404. The ALJ cited to several

20     medical records to support his findings; however, the medical records relate to when Plaintiff

21     was seen for physical problems.  AR 193, 310, 321, 744, 761. In one record, Plaintiff reports

22     an increase in her panic attacks. AR 253. The records cited by the ALJ do not show

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -11

01  unremarkable mental status examinations. Rather, the records show when Plaintiff reported to

02  the emergency room or a doctor for a physical problem the treatment notes reflect Plaintiff's

03  behavior was "normal." The ALJ has failed to cite evidence showing Plaintiff was seen for

04  mental examinations and her findings were "unremarkable."  Therefore, this reason for

05  discrediting Dr. Wheeler is not legitimate or supported by substantial evidence.

06        Third, the ALJ gave little weight to Dr. Wheeler's opinion because Dr. Wheeler's

07  opinion and GAF score was not consistent with her objective findings. AR 404. However, the

08  ALJ failed to specify objective examination findings which contradicted Dr. Wheeler's

09  opinion. *See* AR 404. "[A]n ALJ errs when he rejects a medical opinion or assigns it little

10  weight while doing nothing more than ignoring it, asserting without explanation that another

11  medical opinion is more persuasive, or criticizing it with boilerplate language that fails to

12  offer a substantive basis for his conclusion." *Garrison,* 759 F.3d at 1012-13 (*citing Nguyen,*

13  100 F.3d at 1464). The ALJ's vague, conclusory statement that Dr. Wheeler's opinion is

14  inconsistent with the objective findings lacks the specificity required to discredit a doctor's

15  opinion. *See Embrey*, 849 F.2d at 421-22 (conclusory reasons do "not achieve the level of

16  specificity" required to justify an ALJ's rejection of an opinion).

17        Further, the mental status examination supported Dr. Wheeler's findings.  For

18  example, during the examination, Plaintiff was easily distractible, unaware of mistakes, had

19  limited judgment, derailed thought processes, self-deprecation, impaired delayed memory,

20  and "effortful concentration."  AR 684.  She also displayed anxiety, paranoia, and mood

21  disturbance.  AR 680. Accordingly, Dr. Wheeler's observations and the mental status exam

22  findings support her opinion. The ALJ's finding that Dr. Wheeler's opinion is not supported

01    by her objective examination findings is not specific and legitimate and supported by

02    substantial evidence.

03        The ALJ's fourth reason for discrediting Dr. Wheeler's opinion is because Dr.

04    Wheeler did not have a treating relationship with Plaintiff. AR 404.  An examining doctor, by

05    definition, does not have a treating relationship with a claimant and usually only examines the

06    claimant one time. *See* 20 C.F.R. § 404.1527. "When considering an examining physician's

07    opinion . . . it is the quality, not the quantity of the examination that is important. Discrediting

08    an opinion because the examining doctor only saw claimant one time would effectively

09    discredit most, if not all, examining doctor opinions." *Yeakey v. Colvin*, 2014 WL 3767410,

10    *6, 2014 U.S. Dist. LEXIS 106081 (W.D. Wash. July 31, 2014). Accordingly, this is not a

11    specific and legitimate reason for rejecting the opinion.

12        The ALJ next stated Dr. Wheeler based her findings on Plaintiff's subjective

13    complaints. AR 404. "[An] ALJ may reject a treating physician's opinion if it is based 'to a

14    large extent' on a claimant's self-reports that have been properly discounted as incredible."

15    *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (*quoting Morgan v. Comm'r. Soc.*

16    *Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*citing Fair v. Bowen*, 885 F.2d 597, 605 (9th

17    Cir. 1989)). This situation is distinguishable from one in which the doctor provides his own

18    observations in support of his assessments and opinions. *See Ryan v. Comm'r of Soc. Sec.*

19    *Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("an ALJ does not provide clear and

20    convincing reasons for rejecting an examining physician's opinion by questioning the

21    credibility of the patient's complaints where the doctor does not discredit those complaints

22    and supports his ultimate opinion with his own observations"); *see also Edlund v. Massanari*,

01  253 F.3d 1152, 1159 (9th Cir. 2001). "[W]hen an opinion is not more heavily based on a

02  patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting

03  the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (*citing Ryan*, 528 F.3dat

04  1199-1200).

05      The Court notes

06          experienced clinicians attend to detail and subtlety in behavior,
            such as the affect accompanying thought or ideas, the
07          significance of gesture or mannerism, and the unspoken
            message of conversation. The Mental Status Examination
08          allows the organization, completion, and communication of
            these observations. . . . Like the physical examination, the
09          Mental Status Examination is termed the objective portion of
            the patient evaluation.

10
11   *Blessing v. Astrue*, 2013 WL 316153, *7 (W.D. Wash. Jan. 28, 2013) (internal citations

12  omitted) (*quoting* Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status

     Examination, 3-4 (Oxford University Press 1993)).
13
14          Dr. Wheeler performed an extensive and thorough mental status examination, listing a

15  number of results. *See* AR 681-84. For example, the examination showed Plaintiff's fund of

16  knowledge was three out of four, she could remember three of three items immediately, but

17  only one of three after a delay. AR 684. She could not complete serial sevens and could not

18  spell world backward. AR 684. Plaintiff's insight and impulse control were fair. AR 684. Dr.

19  Wheeler also reported many of her own observations. *See* AR 680. She observed Plaintiff

20  suffered from mood disturbances, anxiety, paranoia, decreased energy, and irritability. AR

21  680. Based on a review of the record, Dr. Wheeler's opinion of Plaintiff's limitations was not

22  primarily based on Plaintiff's subjective complaints.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -14

01          Sixth, the ALJ gave little weight to Dr. Wheeler's opinion because the opinion did not

02   contain a statement of functional capacity. AR 404. The ALJ is correct in finding Dr. Wheeler

03   did not provide a medical source statement. *See* AR 682. However, the ALJ failed to explain

04   how the ALJ's failure to provide a statement of functional capacity undermines Dr. Wheeler's

05   opinion and findings. Therefore, this is not specific and legitimate reason to give little weight

06   to Dr. Wheeler's opinion.

07          Last, the ALJ discredits Dr. Wheeler's opinion because the "review of records

08   provides no independent evaluation of the claimant since it is not supported by an evaluation."

09   AR 404. The ALJ's reasoning is unclear. Dr. Wheeler performed an evaluation of Plaintiff

10   and based her opinion on Plaintiff's subjective complaints, her own observations, and the

11   objective findings from a mental status examination. Dr. Wheeler's review or lack of review

12   of medical records which did not contain examinations of Plaintiff does not detract from Dr.

13   Wheeler's findings. Therefore, this is not a specific and legitimate reason supported by

14   substantial evidence for giving little weight to Dr. Wheeler's opinion.

15          For the reasons discussed above, the ALJ failed to provide specific and legitimate

16   reasons supported by substantial evidence for giving little weight to Dr. Wheeler's opinion.

17   Therefore, the ALJ erred.

18          Had the ALJ properly considered Dr. Wheeler's opinion, he may have included

19   additional non-exertional limitations in the RFC and in the hypothetical questions posed to the

20   vocational expert. As the ultimate disability determination may have changed, the ALJ's error

21   is not harmless and requires reversal. *See Molina*, 674 F.3d at 1115.

22          The ALJ also gave little weight to Dr. Wheeler's opined GAF score. AR 404. The ALJ

01  found the GAF score opined by Dr. Wheeler appeared to take into account psychosocial

02  stressors. AR 404. A GAF score does not directly correlate to the Social Security regulations.

03  *See* 65 Fed.Reg. 50,746, 50,765-766; *Zerba v. Comm'r of Social Sec. Admin.*, 279 Fed. Appx.

04  438, 439 (9th Cir. 2008) (holding that an ALJ did not err in finding a claimant's depression

05  not severe despite the consultative examiner's GAF score of 45). "Given that GAF scores are

06  intended to account for psychosocial stressors, some of which are not relevant to eligibility for

07  disability benefits, and [Dr. Wheeler's] opinion indentified particular psychosocial stressors

08  unrelated to disability, the ALJ's interpretation of [Dr. Wheeler's] opinion is not inaccurate."

09  *Warner v. Colvin*, 2013 WL 6243833, *5 (W.D. Wash. Dec. 3, 2013). Accordingly, the ALJ's

10  decision to give little weight to Dr. Wheeler's assessment of Plaintiff's GAF score is valid.

11      II.   Plaintiff's Credibility

12      Plaintiff testified about her debilitating migraines and pain. AR 437-69.  She described

13  experiencing two or three migraines each month since 2007. AR 438-39. The migraines were

14  poorly controlled with rescue medication.  AR 447. She discussed her severe back pain.

15  "Sometimes I walk with a limp when it's really painful.  If I don't have any of those pills, the

16  naproxen and stuff, I'm really in a lot of pain and I have to lay with my legs up. It's really

17  painful. I can't bend over sometimes. I can't do nothing." AR 440. She told the ALJ she could

18  not walk much, needed to change positions frequently and spends significant time lying down.

19  AR 440-43. Plaintiff also described problems with her right leg, shoulder, wrist, lungs, and

20  depression.  AR 445-6, 455-58, 461-2.

21      The ALJ found Plaintiff not fully credible because 1) the objective medical evidence is

22  not consistent with a finding of disability; 2) her physicians were unable to determine a reason

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -16

01  for her need for high dose opioid medications when her examinations were unremarkable; 3)

02  her physicians repeatedly noted she would benefit from increased physical activity; 4) she

03  failed to respond to requests for additional information regarding her impairments; and 5) her

04  activities of daily living are not consistent with her claims of disability.  AR 414-15.  Plaintiff

05  contends the ALJ failed to identify and explain which testimony is not credible, particularly

06  with respect to her pain, migraines and need to lie down during the day. Dkt. 12, pp. 14-16.

07          The Commissioner is responsible for resolving questions of credibility and conflicting

08  testimony.  *Morgan*, 169 F.3d at 599.  In evaluating a claimant's credibility, the ALJ may use

09  "ordinary techniques of credibility evaluation."  *Molina v*, 674 F.3d at 1112. This includes a

10  claimant's reputation for truthfulness, and inconsistencies in testimony, conduct, daily

11  activities, or work record.  *Thomas*, 278 F.3d at 958-59.  Unless there is affirmative evidence

12  showing that the claimant is malingering, the ALJ must provide clear and convincing reasons

13  for rejecting the evidence.  *Lester*, 81 F.3d at 834.

14          Once a claimant produces medical evidence of an underlying impairment, the ALJ

15  may not discredit a claimant's testimony as to the severity of symptoms based solely on a lack

16  of objective medical evidence to corroborate fully the alleged severity of pain. *Bunnell v.*

17  *Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton*, 799 F.2d at

18  1407) While subjective symptom testimony cannot be rejected solely because it is not fully

19  corroborated by objective medical evidence, medical evidence is still a relevant factor in

20  determining severity of symptoms and their disabling effects.  *Rollins v. Massanari*, 261 F.3d

21  853, 857 (9th Cir. 2001).  An ALJ may discount a plaintiff's testimony when it contradicts

22  evidence in the medical record. *See Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995).

01          Plaintiff testified to extreme pain.  AR 440.  However, her physicians repeatedly

02   reported a lack of medical reasons to support the need for high dose narcotics.  In February

03   2009, Plaintiff met with a new physician who expressed concerns about her narcotic use.  AR

04   357.  Dr. R. Samantha Ritchie concluded, "I am not seeing anything severe on her exam and

05   her nerve conduction studies have been essentially normal."  AR 357. Dr. Ritchie wanted to

06   taper Plaintiff off the high dose narcotics.  AR 357. After MRI and x-rays of Plaintiff's low

07   back, Dr. Ritchie again concluded Plaintiff's examination and results did not require

08   narcotics. AR 353.  The doctor thought Plaintiff had been on narcotics for many years and

09   was having difficulty tapering. AR 353.

10          Similarly, in June 2009, Dr. Joseph Regimbal planned to begin tapering her opioids, as

11   he was "unable to determine any specific issues that should be required [sic] ongoing high-

12   dose opioids." AR 334. Her MRI showed only mild spinal stenosis.  AR 322. He noted only

13   lumbar tenderness with normal range of motion, normal gait, station, coordination, and

14   balance, and no lumbar spasm.  AR 334. Furthermore, the doctor was concerned about

15   Plaintiff's compliance with her pain contract. AR 410.

16          Plaintiff does not address this incongruity, choosing to focus her argument on her need

17   to lie down and migraine headaches.  Dkt. 12, pp. 15-16, Dkt. 19, pp. 6-8. But, the overall

18   medical findings are inconsistent with Plaintiff's alleged level of pain and high dose narcotic

19   therapy.  Plaintiff's physicians repeatedly noted no evidence of underlying medical

20   impairments requiring the level of opioids needed for pain control. The objective medical

21   evidence is normal or indicative of mild problems. AR 322, 353.  Given the record, the ALJ

22

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -18

01  did not err in finding Plaintiff's allegations of disabling impairments are inconsistent with the

02  medical evidence.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007).

03          Additionally, the ALJ found Plaintiff failed to follow her physicians' advice regarding

04  benefit of increased physical activity.  AR 415. Failure to assert a good reason for not seeking

05  or following a prescribed course of treatment or finding  a proffered reason is not believable

06  "can cast doubt on the sincerity of the claimant's pain testimony." *Fair*, 885 F.2d at 603.  Drs.

07  Ritchie and Regimbal both recommended physical therapy.  AR 332, 334, 353.  Dr. Regimbal

08  consistently told Plaintiff she should increase her activity level. AR 320, 329, 336. However,

09  according to Plaintiff's testimony, she spent most of her day lying down. AR 468.  This

10  failure to follow a prescribed course of treatment without adequate explanation supports the

11  ALJ's finding that Plaintiff is not credible.  *Id*.

12

13          The ALJ provided two well supported, clear, and convincing reasons for discounting

14  Plaintiff's testimony.  Even assuming other reasons, like Plaintiff's activities of daily living,

15  were invalid, the ALJ's credibility determination is affirmed.  *See Carmickle v. Comm'r of*

16  *Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (including erroneous reasons among

17  other valid reasons to discount a claimant's credibility does not negate the ALJ's

18  determination and is, at most, harmless error).  On remand, the ALJ need only reconsider

19  Plaintiff's credibility as necessitated by further consideration of the medical opinion evidence

20  of Drs. Heilbrunn and Wheeler.

21          III.     RFC Assessment and Step Five Findings

22          Plaintiff argues because the ALJ erred in his evaluation of the medical evidence, the

01  ALJ erred in his assessment of Plaintiff's RFC. *See* Dkt. 12, p. 17. The ALJ committed

02  harmful error in his consideration of the opinions of Drs. Heilbrunn and Wheeler. *See* Section

03  I, *supra*. As a result of the ALJ's error, the RFC provided by the ALJ is incomplete.

04  Accordingly, on remand, the ALJ must reassess Plaintiff's RFC.

05      Plaintiff also alleges the ALJ erred in his step five analysis because he based the

06  hypothetical questions on an incomplete RFC. *See* Dkt. 12, p. 17. Because the ALJ's RFC

07  assessment was incomplete, the question posed to the vocational expert was also incomplete.

08  Accordingly, on remand the ALJ must apply the new RFC when determining if there are other

09  jobs in the national economy Plaintiff can perform at step five.

10  

11      IV.    Remand for Further Proceedings

12      The ALJ failed to provide legally sufficient reasons to reject the opinions provided by

13  Drs. Heilbrunn and Wheeler.  These errors were harmful and require reversal. Plaintiff

14  contends that reversal for award of benefits is the proper remedy.  Dkt. 12, p. 17, Dkt. 19, p.

15  9.

16      The Court may remand for an award of benefits where:

17          the record has been fully developed and further administrative proceedings would
            serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons
18          for rejecting evidence, whether claimant testimony or medical opinion; and (3) if
            the improperly discredited evidence were credited as true, the ALJ would be
19          required to find the claimant disabled on remand.

20  *Garrison*, 759 F.3d at 1020.  Except in rare circumstances, remand for additional investigation

21  or explanation is the proper remedy.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090,

22  1099 (9th Cir. 2014).  "Administrative proceedings are generally useful where the record 'has

01  [not] been fully developed,' there is a need to resolve conflicts and ambiguities, or the

02  'presentation of further evidence ... may well prove enlightening' in light of the passage of

03  time." *Id*. at 1101 (internal citations omitted).  Here, issues must be resolved concerning

04  Plaintiff's functional capabilities and her ability to perform other jobs existing in significant

05  numbers in the national economy. Therefore, remand for further administrative proceedings is

06  appropriate.

07                                        **<u>CONCLUSION</u>**

08         Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded

09  Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is REVERSED

10  and this matter is REMANDED for further administrative proceedings. On remand, the ALJ

11  must reevaluate the medical opinions provided by Drs. Heilbrunn and Wheeler, develop the

12  record as necessary, determine a new RFC, and proceed with the remaining steps of the

13  sequential evaluation process.

14         DATED this 18th day of December, 2015.

15

16

17                                        David W. Christel
                                          United States Magistrate Judge

18

19

20

21

22

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE -21